# 23-1428

In The
United States Court Of Appeals
For The Federal Circuit

**EGENERA, INC.,**

***Plaintiff-Appellant***

**v.**

**CISCO SYSTEMS, INC.,**

***Defendant-Appellee***

**Appeal from the United States District Court for the District of Massachusetts in Case No. 1:16-cv-11613-RGS, Judge Richard G. Stearns**

## REPLY BRIEF OF PLAINTIFF-APPELLANT

**Robert R. Brunelli**
**Matthew C. Holohan**
**SHERIDAN ROSS P.C.**
**1560 Broadway, Suite 1200**
**Denver, Colorado 80202**
**Telephone: (303) 863-9700**
**Facsimile: (303) 863-0223**

**Counsel for Plaintiff-Appellant**

**Dated: September 25, 2023**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .......... ii
I. INTRODUCTION .......... 1
II. SUMMARY JUDGMENT RULINGS WERE ERRONEOUS .......... 2
III. THE JURY'S NONINFRINGEMENT VERDICT CANNOT STAND .......... 6
A. UCS programs processors to establish network topology. .......... 7
B. UCS modifies messages. .......... 10
C. The UCS identifies and extracts addresses. .......... 11
D. The means-plus-function elements are irrelevant. .......... 13
IV. A NEW TRIAL IS WARRANTED ON MULTIPLE GROUNDS .......... 13
A. The weight of the evidence warrants a new trial .......... 13
B. The district court, like Cisco, improperly highlighted copying in its jury instructions. .......... 14
C. Cisco's improper lay opinion testimony warrants a new trial. .......... 16
1. Egenera's objections to Cisco's lay opinion testimony were not waived. .......... 16
2. Cisco's lay opinion testimony was improper. .......... 18
3. Egenera was prejudiced by Cisco's improper lay opinion testimony. .......... 20
D. Cisco's improper closing arguments warrant a new trial. .......... 21
1. Egenera should not be penalized for observing trial decorum .......... 21
2. Cisco's closing argument was improper in several respects .......... 21
3. Egenera was prejudiced by Cisco's improper closing arguments. .......... 23
V. CONCLUSION AND STATEMENT OF RELIEF SOUGHT .......... 24
CERTIFICATE OF COMPLIANCE .......... 25

# TABLE OF AUTHORITIES

## Cases

*Allen Eng'g Corp. v. Bartell Indus., Inc.*,
299 F.3d 1336 (Fed. Cir. 2002) ....................13

*Crowe v. Bolduc*,
334 F.3d 124 (1st Cir. 2003).................... 17, 18

*Fonten Corp. v. Ocean Spray Cranberries, Inc.*,
469 F.3d 18 (1st Cir. 2006)....................21

*HVLPO2, LLC v. Oxygen Frog, LLC*,
949 F.3d 685 (Fed. Cir. 2020) .................... 18, 19

*Ji v. Bose Corp.*,
626 F.3d 116 (1st Cir. 2010)....................15

*People v. Ignacio*,
852 F.2d 459 (9th Cir. 1988) ....................14

*Phonometrics, Inc. v. Westin Hotel Co.*,
319 F.3d 1328 (Fed. Cir. 2003) ....................3

*Sunoco Partners & Mktg. Terminals L.P. v. U.S. Venture, Inc.*,
32 F.4th 1161 (Fed. Cir. 2022) ....................12

*Teleflex, Inc. v. Ficosa N. Am. Corp.*,
299 F.3d 1313 (Fed. Cir. 2002) ....................4

*Uniloc USA, Inc. v. Microsoft Corp.*,
632 F.3d 1292 (Fed. Cir. 2011) .................... 16, 17

*United States v. Baptiste*,
596 F.3d 214 (4th Cir. 2010) ....................20

*United States v. Belanger*,
890 F.3d 13 (1st Cir. 2018)....................19

*United States v. Correia*,
55 F.4th 12 (1st Cir. 2022)....................15

*United States v. DeStefano*,
59 F.3d 1 (1st Cir. 1995)....................15

*United States v. Hernandez*,
176 F.3d 719 (3d Cir. 1999) ....................14

*Willco Kuwait (Trading) S.A.K. v. deSavary*,
843 F.2d 618 (1st Cir. 1988) .......... 20

**Rules**

Fed. R. Evid. 701 .......... 19

## I. INTRODUCTION

The issues presented in this appeal are discrete. Proper consideration of the factual record and the applicable law reveal a litany of errors by the district court and the jury at both the summary judgment, trial and post-trial stages, as explained in the Opening Brief of Plaintiff-Appellant Egenera, Inc. ("Egenera"). Defendant-Appellee Cisco System's, Inc.'s ("Cisco") Response Brief does nothing to defeat this showing.

For instance, the district court made two separate errors regarding Claims 1 and 5 of U.S. Patent No. 7,231,430 ("the '430 Patent"). First, it made a factual finding of noninfringement that was procedurally improper at the summary judgment stage. Second, it misconstrued the evidence of record. Specifically, the evidence of record establishes that the behavior of Cisco's accused UCS products, especially when communicating via a virtual Ethernet network, constitutes emulation of Ethernet functionality as required by those claims.

Regarding claims 3 and 7, the district court should have entered judgment as a matter of law ("JMOL") in Egenera's favor. No reasonable jury could have adopted any of Cisco's three noninfringement arguments. The UCS CPUs *themselves* are programmed as required by those claims (*i.e.*, programmed with drivers and MAC addresses). That programming is done to establish a virtual local area network topology, as further required by those claims, as no network exists

until the programming is complete. The UCS products receive messages from the CPUs and modify them by removing tags as further required by claims 3 and 7. And the UCS products extract address information in the form of VLAN ID and VSAN IDs. The factual operation of the Cisco UCS products is largely undisputed. Thus, the district court's denial of JMOL had to have been the result of erroneously claim construction.

Finally, Egenera has identified several errors by the district court concerning the conduct of trial. Cisco's counsel also made improper arguments before the jury. These errors warrant a new trial, absent entry of JMOL in Egenera's favor.

Cisco's extensive discussion of the history of network computing, Resp. Br. at 3-20, is largely irrelevant to these discrete issues. When the Court turns its attention to the salient arguments, it is manifest that Egenera's requested relief should be granted.

## II. SUMMARY JUDGMENT RULINGS WERE ERRONEOUS

The summary judgment question is whether it was proper for the district court to find that the evidence Egenera submitted, namely the undisputed facts that "UCS emulates Ethernet functionality," APPX00048, and that the UCS Server CPUs "'communicate on and use virtual interfaces between themselves and UCS Fabric Interconnects over the UCS internal communication network,'" APPX00048-00049, quoting APPX05222, was factually insufficient to

demonstrate that the UCS CPUs "emulate Ethernet functionality over the internal communication network." That factual showing was more than sufficient to defeat summary judgment and Cisco's Reply Brief now confirms the point.

As characterized by Cisco, the district court conducted an "assessment of the evidence" and concluded that "'knowledge and use of a communications network is not emulation of the functionality of that network.'" Resp. Br. at 25-26, quoting APPX00049. The assessment of fact, followed by a conclusion of noninfringement is nothing short of a judicial factual determination at the summary judgment stage—not allowed. Indeed, Cisco seeks to support this factual conclusion not with any legal or factual citations, but through citation to dictionary definitions of "Emulate" and "Emulation" that were not presented below. Resp. Br. at 26-27. Cisco's tactic is legally improper and a recognition that the district court errored. *Phonometrics, Inc. v. Westin Hotel Co.*, 319 F.3d 1328, 1333 (Fed. Cir. 2003) ("We, as a court of review, generally do not consider evidence that has not been considered by the district court.").

Cisco is incorrect that Egenera here seeks a new construction of "emulate Ethernet functionality." Resp. Br. at 27. The meaning of the word "emulate" is not here the issue. Rather, it is whether a factfinder would conclude that the specific use of Ethernet functionality by the UCS CPUs constitutes emulation under Claims 1 and 5. *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1323 (Fed.

Cir. 2002) ("[T]he infringement analysis requires a factual comparison of the claimed invention to the accused device, which is done by the fact finder," not the court, and it was improper for the district court to usurp that role.)

Nor has Cisco refuted Egenera's showing that the specification explicitly describes communication as emulation. In particular, the '430 Patent specification states:

> Each PAN, through software commands, is configured to have a corresponding subset of processors 106 that may communicate via a virtual local area network that is emulated over the PtP mesh. . . . No physical deployment or cabling is needed to establish a PAN.

APPX00103, 3:55-60. The specification then further states that "[u]nder certain preferred embodiments, software logic executing on the processor nodes and/or the control nodes emulates switched Ethernet semantics." *Id.*, 3:60-63. In other words, the specification clearly describes CPUs communicating over an emulated Ethernet network, characterizing that communication as "emulat[ing] switched Ethernet semantics."

In response, Cisco first states that "in the very sentence Egenera quotes, the specification clarifies that the processor nodes emulate *if* there is 'software logic executing' on those nodes." Resp. Br. at 28. But the specification does not state that the "software logic executing" is what emulates the Ethernet functionality.

Rather, the specification includes communication *as part of the software logic*, and thus communication is literally taught to be a type of emulation.

Cisco next states that the quoted passage refers to "processor nodes" rather than processors specifically. *Id.* at 28. But as Cisco acknowledges, "processor nodes" include the processors themselves, as well as, other components, and thus it is natural to conclude that the software logic is executing on the CPUs. In any case, this factual interpretation of the accused system, again, should have been made by the jury, not by the district court.

Cisco next incorrectly asserts Egenera's argument that the UCS processors help create the desired network is waived. Not true. Indeed, that was the centerpiece of Egenera's argument that the district court rejected. *See* APPX00048-00049. None of the passages that Cisco cites equate mere "use" with emulation. Resp. Br. at 29.

On the merits, Cisco resorts to factual disputes concerning Egenera's characterization of the UCS processors that, again, should have gone to the jury. As set forth in Egenera's Opening Brief and as argued to the district court, "the virtual interface functionality includes assignment of virtual MAC addresses to UCS Servers, which are provided to the CPUs within each Server." Op. Br. at 33, citing APPX05223. Egenera supported this assertion below with a citation to the record. APPX05223. In response, Cisco asserts that "MAC addresses are not even

assigned to the UCS processors at all." Resp. Br. at 30. But this is irrelevant, as Egenera's argument was that the MAC addresses are *provided* to the CPUs as part of the emulation process. Cisco characterizes this as the processors being merely "*aware of* the MAC addresses" and declares that this cannot constitute emulation. Resp. Br. at 30. It was error for the district court to have resolved this factual dispute on summary judgment.

Finally, Cisco's attempt to draw a parallel between this dispute and the dispute over programming the processors for Claims 3 and 7. Apples and oranges. Programming and emulation are separate concepts and separate claim elements. The Court should independently determine whether Egenera's evidence of emulation for Claims 1 and 5 is sufficient to withstand summary judgment. The record reflects that it is and thus reversal on that issue is required.

Cisco has, at best, raised factual disputes concerning Claims 1 and 5. The Court should thus now vacate the district court's entry of summary judgment of noninfringement as to those Claims and remand for further required proceedings.

## III. THE JURY'S NONINFRINGEMENT VERDICT CANNOT STAND

As explained in Egenera's Opening Brief, the jury's noninfringement verdict—and the district court's denial of JMOL in Egenera's favor—could only have been based upon the legally improper grafting of extraneous limitations onto

the claims. When the claims are properly applied to the facts of the case, Cisco's infringement is plain.

### A. UCS programs processors to establish network topology.

Cisco's first noninfringement argument at trial was that the UCS does not "program[] said corresponding set of computer processor[s] … to establish the specified virtual local area network topology." APPX00117, 32:19-22. In particular, Cisco asserts that "[o]nce UCS programs the VNICs on the physical network interface cards, the network topology is established, and nothing needs to be (or is) done to the processors." Resp. Br. at 33. But the testimony on which Cisco relies does not establish that this fact is true.

First, Cisco cites Dr. Jones's cross-examination testimony acknowledging two sentences in his report regarding programming the VNIC. *Id.* at 34, quoting APPX13204. On redirect, however, Dr. Jones made clear that there is no topology until the CPU has also been programmed:

> Q Now, counsel just asked you questions about the creation of the VNIC alone. If the VNIC is created but the CPU has not been configured or booted, is there a topology such that messages from the CPU can be communicated among a set of processors in the UCS system?
>
> A No.

APPX13207, 109:5-10. Dr. Jones went on to explain that "[u]ntil the CPU is booted and has the information, such as the MAC address and information about

the VNIC, it can't communicate with the other processors in the topology." *Id.*, 109:10-12. In other words, as explained at length in Egenera's Opening Brief, programming the CPUs with a driver's MAC addresses ***is the operation*** that establishes the network topology. Op. Br. at 36-38. Nor do the conclusory, self-serving statements by its own witnesses on which Cisco relies support the jury's noninfringement finding or contradict the detailed facts identified in Egenera's Opening Brief. Resp. Br. at 34.

Cisco then acknowledges that the processors receive and store MAC addresses but asserts that such loading is not "programming" because the MAC addresses correspond to VNIC addresses rather than CPU addresses. *Id.* But this is irrelevant to the question of whether loading the CPUs with information—*i.e.*, programming them—is necessary to establish the network topology. It undoubtedly is. And Cisco fails to explain why receiving this information at the CPU does not constitute "programming" the processor with network topology. *Id.*

Cisco also implicitly acknowledges that the CPUs cannot communicate with each other until they are loaded with drivers, but nevertheless asserts without explanation that the network topology exists before the network includes CPUs that can communicate with each other. *Id.* at 35. As explained in Egenera's opening brief, it is the communication between CPUs that actually establishes the network topology, and thus programming the CPUs is a necessary step in

establishing that topology. Op. Br. at 36-38.[1] In other words and again, no network topology exists until there are CPUs that can communicate on the network.

Cisco also makes no effort to defend the district court's clear importation of an improper intent requirement to the claims by focusing on the "purpose" of programming the CPUs. Resp. Br. at 36. Egenera is not, as Cisco suggests, seeking a novel claim construction on appeal. *Id.* Rather, Egenera is seeking to apply the legal principle that there can be no intent requirement in the asserted claims and that the "purpose" of performing a particular action is therefore irrelevant. What matters is the ***result*** of programming the CPUs, and the result of programming the CPUs is that the network topology is established. This proper application of the claim language would not, as Cisco asserts, render the "to establish" claim term superfluous. *Id.* at 37. Rather, it would properly recognize that the "to establish" language only requires a ***result*** of programming the CPUs. The language does not amount to an intent requirement as the district court found.

A properly instructed jury could not have reasonably found noninfringement based on the "programming the CPUs" limitation.

[1] Cisco's reliance on the failure of the Egenera BladeFrame product to support the jury's noninfringement finding as to Egenera's *patent* is irrelevant for the reasons discussed in Egenera's Opening Brief, and is consistent with Cisco's pattern of defending against an infringement claim by denying that it copied Egenera's product. *See, e.g.*, Op. Br. at 19-20.

### B. UCS modifies messages.

Cisco's next noninfringement argument centers on the requirement that "messages from the plurality of computer processors to the external communication network … are received and modified by the [at] least one control node." APPX00117, 32:32-35. It is undisputed that the UCS fabric interconnect (the accused "control node") receives messages and removes the VN-tag from those messages before sending them on. Thus, it should be undisputed that the messages received by the fabric interconnect are different from the messages sent by the fabric interconnect because of something the fabric interconnect does to the messages. In other words, the fabric interconnect modifies the messages.

Cisco again seeks to escape infringement by relying on a new limitation that does not exist in the claims. Resp. Br. at 38. According to Cisco, the messages are not modified by the fabric interconnect because "'[t]he message that actually goes out … is exactly the same as the message that came from the CPU.'" Resp. Br. at 38, quoting APPX13008.

But Cisco offers no factual or legal support for its notion of a "permanent change" requirement being present in the claim. Further, Cisco's "telephone" hypothetical only confirms that the claimed modification is made. In Cisco's hypothetical, Carol receives a message from Alex that has been modified by Brian *and then modifies it again* before delivering the message to her mother. The

question is whether the fabric interconnect modifies the message it receives from the processor, and the answer is that it clearly does.

This is not, as Cisco argues, "impermissible rewriting of the claim." Resp. Br. at 39. In fact, *Cisco* is attempting to rewrite the claim by adding a requirement that the message cannot be modified between the processor and the control node. But Cisco cites nothing in the specification or the law of claim construction that would support this additional requirement. Accordingly, because the fabric interconnect transmits a twice-modified rather than an unmodified message from the processors, the claim limitation is met, and the jury could not have reasonably found noninfringement based on this claim limitation.

### C. The UCS identifies and extracts addresses.

Cisco's final noninfringement argument concerned the requirement that "the at least one control node receives . . . storage messages from said corresponding set of computer processors, a[nd] wherein the at least one control node extracts a[n] address from a received storage message, [and] identifies the defined corresponding address in the external storage address space." APPX00117, 32:38-44. As explained in Egenera's Opening Brief, the parties' only dispute concerning this limitation is whether the VLAN ID and VSAN ID tags are "addresses" under Claims 3 and 7.

Cisco declares without explanation that a "tag" cannot be an "address" and thus the limitation is not met. Resp. Br. at 41. But as acknowledged by Cisco, Dr. Jones plainly testified that these tags "act as addresses" and thus satisfy the limitation at least under the doctrine of equivalents. *Id.*, quoting APPX12676. Cisco's brief does not explain what the allegedly missing "routing" or "forwarding" decisions are, or why such decisions must be incorporated in the definition of "address" or its equivalent. Resp. Br. at 42. Instead, Cisco simply states that this flows from a "straightforward application of the plain meaning of 'address.'" *Id.* But without further elucidation of its noninfringement position, there is no basis on which to sustain the jury's apparent disregard of Dr. Jones's testimony that the tags "act as addresses" for the purposes of the '430 Patent.

Finally, the fact that there is a separate, additional "address" in the message, as argued by Cisco, is irrelevant to the question of whether the VLAN ID and VSAN ID are *also* addresses. *Id.* at 41-42. Any additional addresses Cisco may identify are simply additional unclaimed elements that do not defeat infringement of "comprising" patent claims such as Claims 3 and 7. *Sunoco Partners & Mktg. Terminals L.P. v. U.S. Venture, Inc.*, 32 F.4th 1161, 1177 (Fed. Cir. 2022). The record shows that the tags act as addresses for the purposes of the '430 Patent and there is no rational support for any apparent contrary conclusion by the jury.

None of Cisco's three noninfringement arguments could have been reasonably credited. The district court should thus have granted JMOL of infringement in Egenera's favor. Its failure to do so is reversable error.

### D. The means-plus-function elements are irrelevant.

Cisco asserts that the jury's noninfringement verdict can be supported by the means-plus-function limitations of Claim 3. Resp. Br. at 43-44. But there is no basis to assume that the jury found these limitations missing. If the means-plus-function limitations were the basis of the jury's noninfringement finding as to Claim 3, then the jury would have found infringement of Claim 7. The Court should therefore, at a minimum, direct entry of JMOL of infringement of Claim 7.

## IV. A NEW TRIAL IS WARRANTED ON MULTIPLE GROUNDS

The district court's numerous errors warrant a new trial.

### A. The weight of the evidence warrants a new trial.

The parties agree that the Court's weight of evidence determination is largely coextensive with the JMOL issues discussed above. *Id.* at 45. Egenera highlighted Cisco's improper emphasis on copying in its Opening Brief to demonstrate a clear basis on which the jury was misled into reaching an unreasonable verdict. *Allen Eng'g Corp. v. Bartell Indus., Inc.*, 299 F.3d 1336, 1351 (Fed. Cir. 2002) ("copying . . . is of no import on the question of whether the claims of an issued patent are infringed"). In any case, Egenera's copying-based

willfulness theory at trial does not excuse Cisco's improper invocation of its alleged lack of copying as a defense to infringement. Cisco's repeated drum beat on this irrelevant point prejudiced the jury and was improper argument.

### B. The district court, like Cisco, improperly highlighted copying in its jury instructions.

Cisco acknowledges, as it must, that at the very outset of the case the district court defined patent infringement as "'to copy essentially without permission.'" Resp. Br. at 47, quoting APPX13444. Cisco first asserts that Egenera "waited too long to request a curative instruction." Resp. Br. at 48. But Cisco cites no binding, or even pertinent, authority concerning the timing of Egenera's request, instead citing two unpublished district court cases. *Id.* Cisco also has no answer to the principle that a misstatement from a trial court during general orientation can require reversal of the verdict if "it produces prejudice or misleads the jury in a material way." *United States v. Hernandez*, 176 F.3d 719, 731 (3d Cir. 1999) (quoting *People v. Ignacio*, 852 F.2d 459, 461 (9th Cir. 1988)) (internal quotations omitted). That is plainly the case here, especially as "no copying" was Cisco's primary noninfringement argument.

Nor was Egenera's requested curative instruction "random" as Cisco argues. Resp. Br. at 49. The district court's erroneous *definition* of patent infringement during voir dire was foundational to the case. It set the tone for the entire trial. A curative instruction to correct this fundamental error was necessary and never

given. That too was reversable error. *See United States v. Correia*, 55 F.4th 12, 41 (1st Cir. 2022) (noting that jury instructions are reviewed for "wording, form, or substance").

Egenera was unfairly prejudiced by the district court allowing Cisco to place copying at the center of its defense. Cisco relies exclusively on the fact that the district court recited an incomplete set of technically correct instructions without forestalling improper emphasis on copying. Resp. Br. at 51. And given the fact that Cisco relied on its own patents to support its argument that it did not copy, Egenera's proposed instruction was clearly "integral to an important point in the case," *United States v. DeStefano*, 59 F.3d 1, 2 (1st Cir. 1995), *i.e.*, Cisco's copying-based noninfringement defense. And it also "affected the result of the jury's deliberations" as the jury likely dwelled on copying in finding noninfringement. *Ji v. Bose Corp.*, 626 F.3d 116, 126 (1st Cir. 2010).

Cisco's assertion that it relied on its patents for "background information" strains credulity. Resp. Br. at 52. As characterized by Cisco, the patents were cited to explain "how VN-tags work." *Id.* Not true. The record plainly shows that the Cisco patents were used to support noninfringement, not simply as background flavor.

The district court could have easily mitigated the risk of jury confusion by simply instructing the jury, correctly, that a patented product can and often does

infringe other earlier patents. The district court's unexplained and unjustified failure to do so warrants a new trial.

### C. Cisco's improper lay opinion testimony warrants a new trial.

Cisco's lay technical witnesses went beyond merely explaining how the UCS system works and improperly strayed into expert testimony.

#### 1. Egenera's objections to Cisco's lay opinion testimony were not waived.

Cisco first argues that Egenera's objections were waived because they were not made at trial. But as explained in Egenera's Opening Brief, Egenera filed a motion *in limine* to preclude lay opinion testimony. That motion was denied by the district court and that denial preserved further presentation of the objection. APPX00165, ECF 411, ¶ 3. Importantly, Egenera did raise allowed objections during trial as to both witnesses, which the district court overruled. APPX12776, 3:19-24 (Jayakrishnan), APPX12816, 43:2-7 (Dvorkin). Cisco's objections were timely made and fully preserved.

Further, to the extent the Court determines that these trial objections were not timely raised in the course of trial, it is well-settled that a motion *in limine* preserves all objections. *See* Fed. R. Evid. 103(b) ("Once the court rules definitively on the record—either before or at trial—a party need not renew an objection or offer of proof to preserve a claim of error for appeal."); *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1319 (Fed. Cir. 2011) ("Microsoft's in

limine filings" "made its position on this evidence sufficiently clear to preserve the instant challenge") (internal quotation omitted). The First Circuit has clearly held that "[i]f . . . the in limine ruling is final and unconditional, the issue was preserved for appeal and no further steps need be taken to preserve the issue." *Crowe v. Bolduc*, 334 F.3d 124, 133 (1st Cir. 2003). Cisco asserts that *Crowe* is inapplicable because Egenera has not satisfied its "burden to determine whether an in limine ruling was final for preservation purposes." Resp. Br. at 58. But the court in *Crowe* was distinguishing between a "final and unconditional" *in limine* ruling and a "provisional ruling." 334 F.3d at 133. Here, the district court's ruling was not "provisional" and could not have been more definitive:

> MIL #3 to preclude lay witness opinion of two Cisco engineers is <u>DENIED</u> - the opinion testimony is relevant to intent and knowledge for purposes of defending the willful infringement and indirect infringement claims.

APPX00165, ECF 411, ¶ 3. For this reason, Cisco's reliance on *Fusco v. Gen. Motors Corp.*, 11 F.3d 259, 262 (1st Cir. 1993) is inapposite, as the First Circuit in *Crowe* recognized that *Fusco* applied to "provisional" *in limine* rulings, which is plainly not the case here.

Conversely, this Court's decision in *Uniloc is* applicable, as the Court there recognized that the district court made the correct decision in doing the opposite of what the district court did here. Indeed, the court in *Crowe* recognized that this

principle was codified in Federal Rule of Evidence 103, which is thus also applicable to this case. *Crowe*, 334 F.3d at 133.

Nor did Egenera invite the improper testimony from Cisco's lay witnesses, as Cisco asserts. Resp. Br. at 55-56. At most, Egenera elicited testimony concerning the operation of the UCS system, not opinion testimony concerning Egenera's infringement theories. It was improper for the witnesses to offer infringement opinion testimony and this testimony warrants a new trial. *See HVLPO2, LLC v. Oxygen Frog, LLC*, 949 F.3d 685, 689 (Fed. Cir. 2020) (holding that lay witness testimony "directed to the central legal and technical question at trial" is inadmissible).

Egenera's objections to the improper lay opinion testimony of Mr. Jayakrishnan and Mr. Dvorkin were properly preserved. Those objections were improperly ignored and require a new trial.

**2. Cisco's lay opinion testimony was improper.**

Cisco's attempts to defend the lay opinion testimony of its witnesses fail. While it is true that a lay witness may testify to facts underlying expert opinions, they cannot provide bare opinion testimony as to the ultimate conclusion of infringement. *See id.* Egenera's questioning was directed to these facts, not to opinions.

Cisco also cites the district court's permission for Cisco's witnesses to "offer opinion testimony 'relevant to intent and knowledge for purposes of defending the willful infringement and indirect infringement claims.'" Resp. Br. at 60, quoting APPX00165. But even if testimony concerning Cisco's state of mind concerning infringement was admissible, bare opinions as to the final conclusion of infringement was not allowed. In other words, even if Cisco's witnesses could have testified as to why Cisco did not believe it infringed, the witnesses could not express an opinion on the ultimate question of whether Cisco *did* infringe. *See HVLPO2*, 949 F.3d at 689. The district court's denial of Egenera's motion *in limine* failed to recognize this distinction, opening the door for Cisco to present improper lay opinion testimony on the ultimate issue of infringement.

Next, Cisco invokes the provision of Federal Rule of Evidence 701 allowing "testimony based on the lay expertise a witness personally acquires through experience, often on the job." Resp. Br. at 60, quoting *United States v. Belanger*, 890 F.3d 13, 25 (1st Cir. 2018) (internal quotations omitted). But the testimony at issue was not "rationally based on the witness's perception" as required by Rule 701. Fed. R. Evid. 701(a). Again, Mr. Dvorkin's opinion that programming the "interface card" does not constitute programming the CPUs to establish network topology is a conclusion related to the scope of Egenera's patent, not Mr. Dvorkin's on-the-job experience. This is confirmed by his testimony that "the UCS

operates differently from Egenera's patent"—this statement is a bare conclusion of patent law, not a statement of opinion based on perception and technical experience. APPX14545, 6-133:19-21.

### 3. Egenera was prejudiced by Cisco's improper lay opinion testimony.

Cisco asserts that "Egenera had a full and fair opportunity to respond to Cisco's witnesses" and thus could not have been prejudiced by their testimony. Resp. Br. at 61. But cross-examination is not an *ipso facto* cure for improper testimony—otherwise there would be no rules about admissibility of testimony at all. Nor did Egenera "'first elicit[]'" the improper opinion testimony, as discussed above. *Id.* at 62, quoting *Willco Kuwait (Trading) S.A.K. v. deSavary*, 843 F.2d 618, 625 (1st Cir. 1988). The improper lay opinion testimony of Cisco's technical witnesses provided undue weight to Cisco's noninfringement defenses, which was highly prejudicial to Egenera. *See United States v. Baptiste*, 596 F.3d 214, 224 (4th Cir. 2010) (recognizing the danger of "jurors giving undue weight to the lay testimony").

A new trial is warranted based on Cisco's improper lay opinion testimony.

### D. Cisco's improper closing arguments warrant a new trial.

#### 1. Egenera should not be penalized for observing trial decorum.

Cisco asserts that Egenera's objections to Cisco's improper closing argument remarks are waived because Egenera did not interrupt Cisco's closing arguments with objections in real time. Resp. Br. at 62. But the First Circuit is "loath to impose a rule that would require counsel to abandon professionalism and decorum by routinely interrupting the other side's closing argument to avoid the risk of waiving an objection entirely." *Fonten Corp. v. Ocean Spray Cranberries, Inc.*, 469 F.3d 18, 22 (1st Cir. 2006). Accordingly, even if Egenera's objections "were not preserved, we would still review for plain error in order to correct substantial injustice." *Id.* at 21. Egenera's objections to Cisco's closing argument are not waived under First Circuit law.

#### 2. Cisco's closing argument was improper in several respects.

Cisco's argument regarding its violation of the district court's "empty chair" order is self-contradictory. Cisco acknowledges that the district court's order "prohibited the parties from *speculating about why a party did not call a particular witness*." Resp. Br. at 64 (emphasis added). But that is exactly what Cisco did in its closing argument, stating:

> [Mr. Thompson] was the CEO in 2008. He's one who knows, ***and they didn't call him.*** . . . Why did they bring the other two guys to tell you HP wasn't a competitor and

> they were losing sales to UCS and ***they didn't bring the guy that was there at the controls when they canceled the BladeFrame? Why? Because he told the truth.***

APPX14952-14953, 10-14:17-10-15:1 (emphasis added). While Cisco is thus correct that this argument is "open-and-shut," Resp. Br. at 63, it points to the opposite conclusion from what Cisco advances. Cisco plainly violated the district court's "empty chair" order.

Cisco also violated the district court's order barring arguments about litigation funding. Cisco's defense is that the district court's order was limited to "'references to the parties' ability to finance *the current litigation*.'" Resp. Br. at 64, quoting APPX00166. As Cisco acknowledges, its closing argument referred to Egenera's investors as "'taking one last attempt to make some money on that bet.'" Resp. Br. at 65, quoting APPX14987. The clear implication of this argument was that the investors are attempting to make money *through the litigation by funding the litigation*, insinuating contrary to the district court's order that Egenera could not fund the litigation itself. Cisco had no reason to bring up Egenera's investors other than to imply that the litigation was being backed by unscrupulous funders.

Similarly, Cisco defends against its violation of the district court's order against referring to Egenera as a "non-practicing entity" or a "patent troll" by asserting that it did not use "either of those terms at any point during trial." Resp.

Br. at 65. Again, Cisco advances an overly rigid and pedantic reading of the district court's order, asserting that its avoidance of specific terminology, rather than the substance that those terms convey, was sufficient to comply with the district court's order. Tellingly, while Cisco points to Egenera's testimony that it had switched models to a software company, Cisco points to no statements during its closing argument clarifying this point. Rather, Cisco simply told the jury to "think about" the fact that Egenera "stopped using their own patent." APPX14956, 10-18:20-25. The intent of these inflammatory arguments was clearly to prejudice the jury into believing that Egenera was a non-practicing entity unworthy of the protection of its own patents.

#### 3. Egenera was prejudiced by Cisco's improper closing arguments.

Cisco wrongly asserts that its improper closing arguments could not have been prejudicial because they "are only arguably relevant to damages, an issue the jury never reached." Resp. Br. at 67. Yet again, Cisco applies an overly constrained view of the relevant law. Cisco cites no legal authority for the proposition that improper closing arguments only warrant a new trial if they are narrowly tied to a specific issue in the case. Rather, this Court and the First Circuit has held that simply attempting to improperly influence the emotions of the jury—as Cisco did here—is sufficient to warrant a new trial. *See* Op. Br. at 53-54 (citing

cases). The prejudice to Egenera from Cisco's improper closing arguments is manifest, and Egenera is entitled to a new trial.

## V. CONCLUSION AND STATEMENT OF RELIEF SOUGHT

Egenera respectfully requests that the Court grant the relief requested in its Opening Brief.

Respectfully submitted,

Date: September 25, 2023

By: /s/ Matthew C. Holohan

Robert R. Brunelli
rbrunelli@sheridanross.com
Matthew C. Holohan
mholohan@sheridanross.com
SHERIDAN ROSS P.C.
1560 Broadway, Suite 1200
Denver, Colorado 80202
Telephone: (303) 863-9700
Facsimile: (303) 863-0223
litigation@sheridanross.com

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 27(d) and 32(g), the undersigned hereby certifies that this Motion complies with the type-volume limitation of Circuit Rule 27(d).

1. Exclusive of the accompanying documents as authorized by Fed. R. App. P. 27(a)(2)(B) and the exempted portions of the motion as provided by Fed. R. App. P. 27(d)(2) and 32(f), the Brief contains 5,277 words.

2. The Motion has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font as provided by Fed. R. App. P. 32(a)(5)-(6). As permitted by Fed. R. App. P. 32(g), the undersigned has relied upon the word count feature of this word processing system in preparing this certificate.

Date: September 25, 2023

By: /s/ Matthew C. Holohan

Robert R. Brunelli
rbrunelli@sheridanross.com
Matthew C. Holohan
mholohan@sheridanross.com
SHERIDAN ROSS P.C.
1560 Broadway, Suite 1200
Denver, Colorado 80202
Telephone: (303) 863-9700
Facsimile: (303) 863-0223
litigation@sheridanross.com